# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

ARTHUR WITHERS,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

)
)
)
)
)
)
)
)
)
)

Cv. No. 2:11-cv-03134-JPM-dkv
Cr. No. 2:07-cr-20339-JPM

---

## ORDER TO MODIFY THE DOCKET,
## ADDRESSING PENDING MOTIONS,
## DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
## DENYING CERTIFICATE OF APPEALABILITY,
## CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
## AND
## DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Arthur Withers, Bureau of Prisons ("BOP") register number 22138-076, who is currently an inmate at the Federal Correctional Institution Beckley in Beaver, West Virginia (§ 2255 Mot., *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 1),[1] and Withers' Motion for Extension of Time to Reply to the Government's Response Pursuant to 28 U.S.C. § 2255 and Motion to Amend Pursuant to Rules of Civil Procedure Rule 15(c)(1)(B) (Mot. for Extension of Time, *id.*, ECF No. 9; Mot. to Amend, *id.*, ECF No. 10.) For the reasons stated below, the Court

---

[1] The Clerk is directed to modify the docket to reflect Movant's current address, which was obtained from the BOP Inmate Locator, http://www.bop.gov/inmateloc/, and to mail a copy of this order and the judgment to Movant at that address.

GRANTS the Motion for Extension of Time, GRANTS leave to amend and DENIES Movant's §

2255 Motion.

I.     **BACKGROUND**

 A.     **Case Number 07-20339**

On November 8, 2007, a federal grand jury returned a single-count indictment charging

Withers, a convicted felon, with possessing a Beretta .32 caliber semi-automatic pistol on or

about August 1, 2007, in violation of 18 U.S.C. § 922(g).  (Indictment, *United States v. Withers*,

No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 1.)  The factual basis for this charge is stated in

the presentence report ("PSR"):

> 5.     The following information was gathered from a review of materials
> contained in the files of the United States Attorney, including the
> investigative reports of the Memphis Police Department.

> 6.     On August 1, 2007, Memphis Police Department Organized Crime Unit
> Officers executed a search warrant at 3443 Rosamond.  Four people were
> present in the residence at the time of the executed search warrant:
> **Arthur Withers,** Alex Hickerson, Nayia Watson, and Amy Worley.
> Upon forcing entry, officers observed **Arthur Withers** run toward the
> back door carrying a black semi-automatic pistol in his right hand.
> **Withers** then stopped and placed the pistol into one of the kitchen
> drawers.  Officers also observed **Withers** throw a brown paper bag which
> contained 0.16 grams t.g.w. of crack cocaine and 7 Lortab pills onto the
> coffee table.  Officers recovered the Beretta .32 caliber pistol which was
> loaded with eight live rounds from the kitchen drawer.  **Withers** was
> arrested and gave the arresting officers his birth name, Ronrico Ward.  It
> should be noted that **Withers'** name was changed as a child.  When
> officers arrived at the SCCJC at 201 Poplar, officers determined **Withers'**
> true identity using his fingerprints.  **Withers** was read his Miranda Rights
> but refused to give a statement to officers.

> 7.     Officers searched the co-defendant, Alex Hickerson, and located 14.9
> grams t.g.w. of marijuana on his person.  Officers also located a digital
> scale and $349 on the coffee table.  A second handgun, a Colt, .32 caliber,
> handgun loaded with seven live rounds, was located in a bag on the coffee
> table.  Amy Worley advised officers that she had seen **Withers** previously
> carrying the Colt pistol which was chrome in color.  Hickerson also
> informed officers that **Withers** was the owner of the Colt pistol.

8. MPD officers ran a criminal history check on **Withers** and determined him to be a convicted felon. A check of the firearm by agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) determined it was not manufactured in the State of Tennessee and therefore traveled in interstate commerce.

(PSR ¶¶ 5-9.)

Pursuant to a written Plea Agreement, Withers appeared before this judge on April 24, 2009 to plead guilty to the sole count of the Indictment. (Min. Entry, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 47; Plea Agreement, *id.*, ECF No. 50.) On July 17, 2009, the Government filed a position paper that argued for an enhancement for obstruction of justice based on letters written by Withers that appeared to advise a potential witness how to testify at a suppression hearing. (Position of the United States at 1, *id.*, ECF No. 52.) Notwithstanding this conduct, the Government took the position that Withers should be awarded a reduction for acceptance of responsibility. (*Id.* at 1-2.)

At a sentencing hearing on July 22, 2009, the Court sentenced Withers to a term of imprisonment of one hundred four months, to be followed by a three-year period of supervised release. (Min. Entry, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 54; Sentencing Hr'g Tr. 61, 70, *id.*, ECF No. 63.)[2] In arguing against the enhancement for obstruction of justice, defense counsel stated that the letter "has been an issue from the beginning. I think I—without—Mr. Withers has really sat in the court library out at Mason and

---

[2] The 2008 edition of the *Guidelines* Manual was used to calculate Withers' sentence. (PSR ¶ 12.) Pursuant to § 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is 24 if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. Withers received a two-point enhancement for obstruction of justice, U.S.S.G. § 3C1.1, and a three-point reduction for acceptance of responsibility, resulting in a total offense level of 23. Given Withers' criminal history category of VI, the guideline sentencing range was 92-115 months.

really tried to research this. One of the issues was whether he ever intended to carry that through, but I told him that is going to be an issue, so I think we're all aware of the issues . . . ." (Sentencing Hr'g Tr. 4-5, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 63.) The Court noted that there was no suppression hearing in the case but that an attempt is normally enough to enhance a defendant's sentence for obstruction of justice. (*Id.* at 6; *see also id.* at 19-20.) Judgment was entered on July 22, 2009. (J. in a Criminal Case, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 56.)

The United States Court of Appeals for the Sixth Circuit affirmed Withers' sentence. *United States v. Withers,* 405 F. App'x 951 (6th Cir. 2010).

### B.      Civil Case Number 11-3134

On December 28, 2011, Withers filed his *pro se* § 2255 Motion, accompanied by a legal memorandum. (§ 2255 Mot., *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 1; Mem., *id.*, ECF No. 1-1.) The issues presented in Withers' § 2255 Motion are as follows:

1.      "Rule 32 violation by the government ([l]ate objection) to the PSI not enhancing me" (§ 2255 Mot. at PageID 4);

2.      "Ineffective counsel" (*id.* at PageID 5); and

3.      "Police officer Misconduct Lt. Paul Sherman under investigation (new evidence)" (*id.* at PageID 7).

On May 25, 2012, Withers submitted a letter to this judge and various letters he had received. (Letter, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 2.)

In an order issued on December 21, 2012, the Court directed the Government to respond to the § 2255 Motion. (Order, *id.*, ECF No. 3.) The order provided that "[t]he Government may limit its response to the third issue presented by Defendant, whether defense counsel was ineffective by recommending that Defendant plead guilty despite asserted misconduct by the police." (*Id.* at 1-2.)

On March 4, 2013, the Government filed the Response of the United States to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Answer"), which included the declaration of Movant's trial counsel, Eugene Laurenzi. (Answer, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 6; Laurenzi Decl., *id.*, ECF No. 6-1.) On May 29, 2013, Withers filed his reply, which was titled "Brief Motion To Vacate, Set Aside, or Correct Pursuant to 28 U.S.C. 2255 Pro Se" ("Reply"). (Reply, *id.*, ECF No. 11.)[3]

On April 19, 2013, Withers filed a Motion to Amend Pursuant to Rules of Civil Procedure Rule 15(c)(1)(B). (Mot. to Amend, *id.*, ECF No. 10.) The proposed amendment, which is not on the official form, contains additional argument in support of Claim 3. In the absence of objection by the Government, leave to amend is GRANTED. The Court will consider the additional arguments set forth in the amendment.

## II.        THE LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

---

[3] On April 12, 2013, Withers filed a motion seeking an extension of time to file his reply. (Mot. for Extension of Time to Reply to the Gov't's Resp., *id.*, ECF No. 9.) For good cause shown, that Motion is GRANTED. Movant's Reply is timely.

move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the movant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a movant may

obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotation marks omitted). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who

presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

III.        **ANALYSIS OF MOVANT'S CLAIMS**

A.     **The Government's Late Objection to the PSR (Claim 1)**

In Claim 1, Withers complains that the Government's objection that the PSR failed to include an enhancement for obstruction of justice was untimely. (§ 2255 Mot. at PageID 4, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 1.) The factual basis for this issue is the following:

> On 6/19/2009 the PSI was prepared and the probation Dept did not enhance me for 3C1.1, but on 7/17/09 the government filed a late objection to the pSI [sic] not enhancing me for 3C1.1 and called it Position Regarding Presentence Report but it was an objection asking the judge to enhance me for evedence [sic] of 3C1.1 obstruction of justice that he would not have heard at my sentencing because it was no where in my case or PSI[.] The OBJECTION was way past the number of days allowed by Rule 32[.] My attorney turned in (filed) a late Position Regarding Sentencing also[. T]he judge enhanced me for information in that objection that he should not have heard because the objection should have been sent to the probation Dept first not the judge to be cleared up by the probation Dept!

(*Id.*)

Claim 1, which arises from an alleged violation of the time limitations in Rule 32 of the Federal Rules of Criminal Procedure, is not cognizable in a § 2255 motion because it could have been raised on direct appeal. Therefore, Claim 1 is without merit and is DISMISSED.

**B.     Ineffective Assistance of Counsel (Claim 2)**

In Claim 2, Withers argues that his attorney rendered ineffective assistance, in violation of the Sixth Amendment. (§ 2255 Mot. at PageID 5, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 1.) The factual basis for this issue is as follows:

> My attorney failed to make an objection to the late filed Position Regarding PSI because he violated the Rule 32 also therefore allowing the judge to hear information that was used to enhance my sentence. My attorney advised me to plea [sic] guilty to a crime I did not commit also telling me that it was my word verses [sic] the officers. My attorney would not raise my Rule 32 issue because he knew it would show he [sic] ineffectiveness by not recognizing the governments mistakes as his own mistakes[.] He had no arguments prepared at sentencing and no case law! My attorney advised me not to fight my case and to admit everything.

(*Id.* at PageID 5-6.)

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.[4]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.  Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to rule out [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").  Where, as here, a movant contends that his attorney rendered ineffective assistance at a sentencing hearing, prejudice is established where a misapplication of the Sentencing Guidelines increased a prisoner's sentence.  *Glover v. United States*, 531 U.S. 198, 202-04 (2001).

Withers' assumption that he would not have received an enhancement for obstruction of justice if his attorney had objected to the Government's late-filed position paper is inaccurate. Withers relies on Rule 32(f)(1) of the Federal Rules of Criminal Procedure, which states that, "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."  Rule 32(e)(2) provides that "[t]he probation

---

[4] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."  *Id.* at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Id.*

officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period." Here, the PSR was prepared on June 19, 2009, thirty-three days before the sentencing on July 22, 2009. Objections were due on July 6, 2009.[5] Both parties filed their position papers on July 17, 2009. (*See* Position Paper of Def. Arthur Withers With Regard to Sentencing Factors and Sentencing Mem., *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 51; Position of the United States, *id.*, ECF No. 52.) Withers is correct, therefore, that both parties filed late position papers.

Withers' assumption that an objection to the Government's late-filed position paper would have prevented him from being enhanced for obstruction of justice is incorrect. Rule 32(b)(2) provides that "[t]he court may, for good cause, change any time limits prescribed in this rule." Late-filed position papers are common and, if an objection is raised, the usual remedy is to continue the sentencing hearing if necessary to enable the opposing party adequate time to prepare. Withers does not contend that the Government's objection came as a surprise or that his attorney was not prepared to address the substance of the obstruction issue. At the sentencing hearing, defense counsel stated that "I have been through this and all I can say is this has been an issue from the beginning. . . . One of the issues was whether he ever intended to carry that through, but I told him that that is going to be an issue, so I think we're all aware of the issues . . . ." (Sentencing Hr'g Tr. 4-5, *id.*, ECF No. 63.)[6] The Court would not have declined to

---

[5] Fourteen days after June 19, 2009, was July 3, 2009, the day on which Independence Day was observed that year.

[6] Withers also appears to assume that the objections to the PSR should have been made to the probation officer rather than filed with the Clerk. (*See* § 2255 Mot. at PageID 4, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 1.) The probation officer ordinarily addresses objections to the guideline calculations. An objection to the timeliness of a party's objections is properly resolved by the Court. *See* Fed. R. Crim. P. 32(f)(3) & (g).

impose the enhancement for obstruction of justice because the Government's position paper was not filed fourteen days after receipt of the PSR.

Withers' suggestion that counsel was unprepared for the sentencing hearing is contradicted by the record. As previously noted, defense counsel filed a position paper that included objections to the PSR. Counsel also made additional objections and argument at the hearing, which the Court fully considered. Withers does not identify any specific action his attorney should have taken (other than to object to the late-filed PSR), and he does not argue that, if only his attorney had raised additional objections or made different arguments, there is a reasonable probability that the sentence imposed would have been different.[7]

In his Reply, Withers complains that his attorney was ineffective in failing to retain a handwriting specialist to investigate whether Withers wrote the letter and in failing to challenge the alleged illegal search that led to discovery of the letter. (Reply at 12-13, 17, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.) Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation marks and citations omitted). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 425. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.,* one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

___

[7] Withers' claim that his attorney advised him to plead guilty will be addressed in connection with Claim 3.

*Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (internal quotations marks and citations omitted).

Withers "has the burden of establishing his standing to assert a Fourth Amendment violation."

*United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). Nothing in Withers' filing suggests

that he would have standing to challenge the search that led to the discovery of the letter

soliciting perjury.

As for defense counsel's failure to retain a handwriting expert, Withers has not stated that

he was not the author of the letter at issue and has not claimed that he told his attorney that he

did not write the letter. Withers makes no argument that he suffered any prejudice from his

attorney's failure to retain a handwriting expert.

Claim 2 is without merit and is DISMISSED.

## C.     The Allegedly Involuntary Guilty Plea (Claim 3)

In Claim 3, titled "Police Officer Misconduct Lt. Paul Sherman under investigation (new

evidence)," Withers argues that his attorney recommended that he plead guilty to an offense that

he did not commit. The factual basis for this issue is the following:

> On August 1, 2007, Lt. Paul Sherman falsely charged me with a pistol I didn't
> have and beat me up while asking me my name. He dragged me down the
> hallway of the residence. TOLD ME that he wished he saw me with a gun he
> would have shot me and that he had already shot two people I would have been
> the third. He told me I was going federal were his words. The officer Paul
> Sherman is presently under investigation for misconduct (OCU). He never saw
> me with a gun in my hand. I was falsely arrested because I wasn't truthful about
> my name! Lt Paul Sherman if convicted will not be creditible [sic] to testify!

(§ 2255 Mot. at PageID 7, *Withers v. United States,* No. 2:11-cv-03134-JPM (W.D. Tenn.), ECF

No. 1.)

The two-part test stated in *Strickland v. Washington* applies to challenges to guilty pleas

based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

"Where, as here, a defendant is represented by counsel during the plea process and enters his

plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation marks and citations omitted). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of claim, a [prisoner] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").[8]

The Government has submitted the Declaration of Withers' trial counsel, Eugene Laurenzi, which states as follows:

I, Eugene Laurenzi, attorney at law, declare under penalty of perjury as follows:

1.      That this declaration is being provided in connection with a 2255 petition to vacate or correct sentence, that the Petitioner Arthur Withers ("Withers") has filed *pro se* before this Court (Cv. No. 11 3134) alleging ineffective assistance of counsel in my representation of Withers in Cr. No. 07 20339.

---

[8] The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill*, 474 U.S. at 59.

2.      That I represented Petitioner Withers in Cr. No. 07 20339 before the Honorable Chief Judge Jon P. McCalla, United States District Court for the Western District of Tennessee in a one count indictment charging a violation of 18 U.S.C. § 922(g)[.]

3.      That I was appointed by this Court to represent Petitioner Withers pursuant to the Criminal Justice Act.

4.      That I am admitted to practice law in the State of Tennessee and have been practicing law for the past 30 years.

5.      That I have represented a number of clients charged with a violation of 18 U.S.C. § 922(g), and am familiar with the offense as well as the penalties associated with this offense.

6.      That during my representation of Petitioner Withers we met on numerous occasions to discuss the facts of his case additionally [sic] I am in receipt of numerous correspondence from Petitioner discussing his case.

7.      That Petitioner Withers initially denied having possessed the gun which was in direct conflict with the police reports. Mr. Withers also insisted that the MPD officer who arrested him, Paul Sherman, had been indicted. I investigated this and can find no basis for this allegation.

8.      That Withers was the only witness that would testify as such, which would put his credibility at issue.

9.      That based upon his prior convictions and importantly a letter which was discovered where he asked his cousin to lie in court if a suppression hearing were held, I advised Petitioner, it would be difficult for a jury to believe his testimony over that of an officer. That an offer was made to allow him acceptance of responsibility points even in light of his receiving additional points under the USSG for "Obstruction of Justice" and it was my legal opinion this was his best option.

10.     That the decision to plead guilty was his, and that if he chose not to plead guilty I advised him I would proceed to trial with him and make every attempt to impeach the witnesses called to testify.

11.     That I believe that Petitioner Withers received competent and effective representation in this cause. Even though Mr. Wither's [sic] sentence was significant my advice to him was to resolve his case to receive whatever benefit he could. If he was convicted my advice to him is he would have received close to the statutory maximum of 120 months.

12. As such, the quality of legal representation Petitioner Withers received in this case invariably met the standards set out in *Strickland v. Washington,* 466 U.S. 668 (1984).

(Laurenzi Decl. ¶¶ 1-12, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 6-1.)

At the change of plea hearing, Withers testified that he was fully satisfied with Laurenzi's representation and advice. (Guilty Plea Hr'g Tr. 8, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 79.) Withers also testified as follows:

Q. Mr. Withers, Ms. Kimbril-Parks has read over the entire agreement as presented to the court. We made one correction on the first page just to make the numbers and the guideline reference letters correct. Having gone over this agreement, is that the agreement as you understand it?

A. Yes, sir.

Q. Has anyone made any other promise to you in order to get you to plead guilty?

A. No, sir.

Q. Has anyone attempted in any way to force you to plead guilty?

A. No, sir.

Q. Again, has anyone threatened you in any way?

A. No, sir.

Q. Are you pleading guilty of your own free will?

A. Yes, sir.

Q. Are you pleading guilty because you are, in fact, guilty of this offense?

A. Yes, sir.

*Id.* at 12-13.)  Withers testified that he understood the rights he was waiving by pleading guilty.  (*Id.* at 17-18.)  He understood the charge against him and the elements the Government would have to prove to obtain a conviction.  (*Id.* at 18-19.)[9]

During the recitation of the facts the Government was prepared to prove at trial, it became clear that Withers was conflicted about admitting his guilt.  Mr. Laurenzi stated that "I have gone over this, we have gone over this a lot, so I think it's a tough decision for Mr. Withers. . . .  We're prepared to—like I say, he has got a decision to make.  So I'm—we can go to trial, we can plead, whichever he prefers.  I know the facts very well."  (*Id.* at 21.)  After the Government's recitation of the facts (*id.* at 22-23), Laurenzi conferred with Withers and then indicted that he had no objections or corrections (*id.* at 23).  Withers then indicated that he wanted to tell the Court what had happened to him.  (*Id.*)  At that point, the following exchange occurred:

> THE COURT:  He wants to tell me some sentencing issues?
>
> MR. LAURENZI:  No, Your Honor, here is the thing in this case, and I—and I have gone through this extensively with Mr. Withers.  We met—I'm not saying—we met for over three hours a couple of weeks ago.  This case is going to come down to what happened in that house.

---

[9]  In his Reply, Withers states that, prior to the guilty plea hearing, the prosecutor modified the Plea Agreement to strike language referring to obstruction of justice.  (Reply at 13, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.)  The first page of the Plea Agreement contained a typographical error in that one reference to § 3E1.1 of the sentencing guidelines mistakenly referred to § 3C1.1.  (*See* Plea Agreement at 1, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 50.)  It is clear in context that that reference was an error because the paragraph at issue addresses Withers' eligibility for a reduction for acceptance of responsibility.  Even if Withers had argued that he had an agreement with the Government not to seek a sentence enhancement for obstruction of justice, any such argument would be precluded by the plea colloquy.  Withers stated that he had no additional agreement with the Government that was not reflected in the written Plea Agreement.  (Guilty Plea Hr'g Tr. 8, *id.*, ECF No. 79; Plea Agreement at 2, *id.*, ECF No. 50 ("ARTHUR WITHERS agrees that this plea agreement constitutes the entire agreement between himself and the United States . . . .").)

THE COURT:          Sure.

MR. LAURENZI:          You have got two officers in there, they say Mr. Withers run [sic] in the back of the kitchen.  We had an investigator go out there, we have taken pictures, and there's some factual disputes, that's what this case came down to.  Mr. Withers has a prior criminal history, there's some other issues floating out there, and so it is going to come down to he said–she said.  And either Mr. Withers needs to go to trial, which I have told him we can do or we need to get this case done, so today is kind of the day we may decide to do that, and that's what I think he wants to tell the court, and I don't want him to go much past that.  Isn't that what you want to tell the court?  It is not the time to argue what happened in that house.  Nothing is perfect and everybody's recollection may be a little different, but you're going to have to tell the court whether that's essentially the facts.  Do you want to go to trial, and this is what we're going to do because I'm ready to go to trial or ready to go ahead and get through the plea with you.

BY THE COURT:

Q.          Well, I do need to know on that, you said that you did want to plead guilty, and I will simply ask it again because there has been some discussion, I'm not suggesting anything.

A.          You know, I—it's just—it's a situation where, you know, it's a line between a certain amount of years of my life fighting a case and pleading guilty, a representative amount of time, and I don't want to—I would rather plead guilty instead of—

Q.          I don't have anything to do with the negotiation.  All I do is ask that question.

MR. LAURENZI:          No, I know, Judge.  I think a—he's not really trying to cut a better deal if we can say that.  What's he's saying is that he has got a hard decision to make with all the facts the way they're marshaled, and he's trying to make the best decision he can.  I mean it's the facts, and the government is going to say one thing, and at the trial, the defendant, if he takes the stand can say another, but I mean that's what he is saying, right, Mr. Withers?  I don't want to—so you have got to decide, we can do this or go to trial.

THE DEFENDANT:  I'm going to plead.

THE COURT:          Okay.

THE DEFENDANT:  I'm going to plead.

(*Id.* at 23-25.)   Despite his position that he never possessed the weapon, Withers made the voluntary and intelligent decision to plead guilty.   Withers does not contend that his attorney threatened or coerced him to plead guilty.   Although Withers emphasizes that he might have been able to impeach Lieutenant Sherman had the case gone to trial, he overlooks the fact that two of the persons who were present in the apartment at the time of the search told the police that Withers owned and had previously possessed the Colt pistol.  (PSR ¶ 7.)[10]

In his Reply and his amendment, Withers sets forth various other bits of information that he contends could have been used to impeach Lieutenant Sherman.   For example, in late 2011, an opinion from the City of Memphis' ethics office concluded that Memphis Police Officers, including Sherman, who had started a company to train police for undercover work had violated city ethics rules by using their positions for private gain.   Sherman, who had coordinated the Organized Crime Unit's undercover program, had the authority to recommend that officers take training at the outside company.   Sherman resigned from the police department after issuance of the ethics opinion.  (*See* Reply at 15, 20-22, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11; *see also* Memphis Police officer's firm runs afoul of ethics, *The Commercial Appeal* (Oct. 31, 2011), ECF No. 10 at PageID 77.)   The ethics opinion was issued

---

[10] Withers complains that "Laurenzi never hired an investigator to find witnesses that would back up Withers defense and that could testify as to  how Sherman planted the gun, drugs and beat Withers."  (Reply at 15, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.)   At the guilty plea hearing, Mr. Laurenzi represented that "[w]e had an investigator go out there [to the house where the search occurred] . . . ."  (Guilty Plea Hr'g Tr. 24, *United States v. Withers,* No. 2:07-cr-20339-JPM (W.D. Tenn.), ECF No. 79; *see also Ex Parte* Mot. to Obtain Expert Services, *id.*, ECF No. 37 (sealed).)   It is Withers' responsibility to identify any witnesses that his attorney should have located and to specify the substance of their anticipated testimony.   Withers has not adequately alleged that he was prejudiced by his attorney's purported failure to investigate.

more than two years after Withers was sentenced, and nothing in his various submissions suggests that that information was available prior to the time he entered his guilty plea.[11]

The other alleged instances of misconduct identified by Withers suffer from the same deficiencies. Withers cites two opinions by the Sixth Circuit issued after the date of his sentencing that involved testimony by Lieutenant Sherman. (*See* Reply at 9-10, *Withers v. United States,* No. 2:11-cv-03134-JPM (W.D. Tenn.), ECF No. 11.) In *United States v. Walker,* 506 F. App'x 482 (6th Cir. 2012), the defendant complained that the police officer witnesses, including Sherman, had improperly referred during their testimony to allegations of drug dealing that had caused them to investigate the defendant in the first place. In evaluating the effect of those statements, the Court of Appeals wrote that "[w]e will assume arguendo that all the contested statements were improper." *Id.* at 486. The Court of Appeals also stated, however, that "it does not appear that the statements were made in bad faith. . . . Additionally, the district court noted that it believed the improper comments were unintentional." *Id.* The 2010 trial in *Walker* post-dated Withers' guilty plea and sentencing, and the statements by Lieutenant Sherman do not go to his character for truthfulness or untruthfulness.

In *United States v. Ray,* 361 F. App'x 674, 676 (6th Cir. 2010), the second decision on which Withers relies, the Court of Appeals affirmed a district court finding that the defendant had consented to the officers' entry into his motel room, relying on the testimony of Sherman.

_____

[11] Withers also asserts that Sherman "has been stealing funds from . . . the Organized Crime Unit that he ran and has been under investigation for stealing ammunition . . . ." (Reply at 15, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.) The newspaper reports cited by Withers do not reflect that Sherman has been accused of stealing money or ammunition. (*See* Ammunition missing from Memphis Police Department training academy, *The Commercial Appeal* (Nov. 8, 2011), ECF No. 10 at PageID 79-80; Audit: MPD Organized Crime Unit Didn't Follow Spending Guidelines, *Memphis Daily News*, ECF No. 10 at PageID 81-82.) These sources would not provide defense counsel with a good faith basis to question Sherman about whether he had stolen funds or ammunition.

The opinion concludes that "we cannot say that the district court's decision to credit the officers' testimony rather than the defendant's and his girlfriend's was clearly erroneous." *Id.* Withers' notes that the opinion also states that "[t]he district court acknowledged the 'faint possibility' that 'someone might have drawn a gun' and rejected it in light of its decision to credit the officers' testimony." *Id.* That the district court acknowledged the "faint possibility" that events might have transpired as the defendant testified does not constitute a finding that Sherman lied under oath. This decision, and the underlying decision on the suppression issue, would not have been admissible to impeach Sherman's character for truthfulness.

Withers also complains that his attorney did not investigate whether Sherman had ever shot a suspect. (*See* Reply at 9, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.) According to Withers, this evidence, if established, might have bolstered his claim that Sherman assaulted him during the execution of the search warrant. Any such evidence would not have been admissible under Federal Rule of Evidence 608 and would have been properly excluded under Rule 403. Withers' claim that Sherman used excessive force in arresting him would also be of doubtful relevance because he did not make any incriminating statements.[12]

Finally, Withers complains that Laurenzi had a conflict of interest because his brother, Lawrence Laurenzi, was the acting United States Attorney at the time of his indictment. (*See* Reply at 8, 10-12, *Withers v. United States,* No. 2:11-cv-03134-JPM-dkv (W.D. Tenn.), ECF No. 11.)[13] A criminal defendant has a constitutional right under the Sixth Amendment to expect that

---

[12] Withers' remedy for the officers' use of excessive force in effecting his arrest was to file a civil suit under 42 U.S.C. § 1983. He did not do so, and the statute of limitations has now expired.

[13] Withers also asserts that Laurenzi's law partner, Deborah Godwin, is related to then-Memphis Police Director Larry Godwin. (*Id.* at 11.) It is been publicly reported that Deborah

his attorney will represent him conflict-free. *See Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982)). To establish a violation of this right, the defendant must show that counsel had an actual conflict of interest. "An actual conflict, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Moss v. United States*, 323 F.3d 445, 464-64 (6th Cir. 2003). "[U]ntil a defendant shows that his counsel *actively* represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

A familial relationship between a defense attorney and a prosecutor ordinarily does not constitute an actual conflict of interest. *See United States v. Fazio,* 487 F.3d 646, 655 (8th Cir. 2007) (affirming trial court's refusal to hold an evidentiary hearing on claim that the attorney a defendant had initially retained was married to an AUSA who was allegedly involved in the early investigation of the charges against him, explaining that "[w]e agree with both the government and the district court that the conflict claims were too speculative to warrant an evidentiary hearing"); *Redden v. Calbone,* 223 F. App'x 825, 829 (10th Cir. 2007) (denying certificate of appealability in 2254 case where prisoner alleged that his attorney's father was the county district attorney, reasoning that, "[a]lthough Redden's trial counsel and the district attorney were related, he has not shown that the relationship resulted in a division of loyalties adversely affecting the trial counsel's performance."); *see also Flores-Diaz v. United States,* 516 F. Supp. 2d 818, 831 (S.D. Tex. 2007) (denying 2255 motion in which alien defendant argued

---

Godwin and Larry Godwin are not related. *See, e.g.,* Police director disbands Memphis undercover unit, officers say; city officials deny report, *The Commercial Appeal* (June 21, 2011).

that his attorney had a conflict of interest because his brother was a United States Marshal, noting that "Flores has not demonstrated any conflict which adversely affected his counsel's performance").

Claim 3 is without merit and is DISMISSED.

Because every issue presented by Movant has been dismissed, his motion pursuant to 28 U.S.C. § 2255 is DENIED.  Judgment shall be entered for the United States.

## IV.        APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, the issues raised by Movant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[14]

IT IS SO ORDERED, this 26th day of March, 2015.


s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[14] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.